UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALETA BUSSELMAN,<br><br>                Plaintiff,<br><br>v.<br><br>BATTELLE MEMORIAL INSTITUTE, an Ohio nonprofit corporation,<br><br>                Defendant. | No.   4:18-cv-05109-SMJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL** |

Before the Court, without oral argument, is Plaintiff's Motion for New Trial, ECF No. 339. After a two-week trial, a jury found Defendant not liable for whistleblower retaliation because it concluded Plaintiff had not made a disclosure protected under the National Defense Authorization Act's ("NDAA") whistleblower provisions. Plaintiff now moves to set aside that verdict, contending the jury's decision ran contrary to the "clear weight of the evidence." Having reviewed the record, the Court finds sufficient evidence to justify the jury's conclusion and is not left with a "definite and firm conviction" that the jury erred in reaching its verdict. Thus, in deference to the jury's factfinding role, the Court denies Plaintiff's motion for a new trial.

ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL – 1

## BACKGROUND

Plaintiff brought suit under the whistleblower retaliation provisions of the NDAA, 41 U.S.C. § 4712. ECF No. 1 at 24. Plaintiff alleged Defendant, a Department of Energy contractor, retaliated against her for allegedly reporting what she perceived to be improper interference by management in a "root cause analysis,"[1] begun after Defendant made a $530,000 payment to a fraudulent entity. *See id.* at 13–20. Plaintiff's theory at trial was that management interfered with the root cause statement to ensure the report attributed as little fault as possible to Defendant, thereby increasing the likelihood the Government would absorb the loss from the fraud instead of requiring Defendant to bear the cost. *See* ECF No. 339 at 11. Plaintiff argued an email she wrote to a supervisor during the root cause process, wherein she protested allowing "concerned stakeholders [to] manipulate root causes," was a protected disclosure under the NDAA. *See id.* at 5.

Over nearly two weeks, Plaintiff's claims were tried to a jury. Following the eighth day of testimony, the Court instructed the jury, the parties made closing arguments, and the jury began deliberations. ECF No. 332 at 1. The jury deliberated for an hour, retired for the evening, and returned the following morning. *See* ECF

---

[1] Testimony at trial established that a "root cause analysis" is an independent assessment of the underlying cause or causes that contributed to an undesirable condition or event. The "root cause statement" is a summation of the analysis's findings.

ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL – 2

No. 329 at 1–2; ECF No. 331 at 1. After approximately ninety minutes of deliberations on the ninth day of trial, the jury returned with its verdict, answering "no" to the first of six questions on the special verdict form: "Has the plaintiff proved, by a preponderance of the evidence, that she made a disclosure protected by the National Defense Authorization Act's Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information?" ECF No. 331 at 1; ECF No. 332 at 1. Judgment was entered on the jury's verdict in favor of Defendant. ECF No. 334.

Plaintiff now moves the Court to set aside the jury's verdict and order a new trial because she contends the jury erred in finding, against "the clear weight of the evidence," that she had not made a protected disclosure under the NDAA. ECF No. 339 at 2. Defendant opposes the motion, arguing that the jury's verdict was supported by the evidence and should not be set aside. ECF No. 346.

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(a)(1) empowers the Court to order a new trial after the jury has returned a verdict for a variety of reasons including, as relevant here, "that the verdict is against the weight of the evidence." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). In evaluating such a motion, the Court may "weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party."

*Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987) (citing *Fount–Wip, Inc. v. Reddi-Wip, Inc.*, 568 F.2d 1296, 1302 (9th Cir. 1978); *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 256 (9th Cir. 1957)). Though the Court is vested with "a measure of discretion" that is inappropriate when evaluating whether to enter judgment as a matter of law, the standard applicable to a motion for a new trial is nevertheless "stringent," and the party moving to set aside the jury's verdict bears a heavy burden. *Venegas v. Wagner*, 831 F.2d 1514, 1519 (9th Cir. 1987) (citing *Digidyne Corp. v. Data General Corp.*, 734 F.2d 1336, 1347 (9th Cir. 1984)). While the applicable standard evades precise articulation, "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed," a new trial is appropriate. *Landes Const. Co.*, 833 F.2d at 1371–72 (quoting 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2806, at 48–49 (1973)).

## DISCUSSION

Plaintiff contends the jury's conclusion that she did not make a disclosure protected under the NDAA was contrary to the clear weight of the evidence and should therefore be set aside. *See* ECF No. 339 at 7–8. The NDAA confers whistleblower protections on disclosures an individual "reasonably believes" relates to one or more of several categories of misconduct, including "an abuse of

authority relating to a Federal contract."[2] 41 U.S.C. § 4712(a)(1). The NDAA defines an "abuse of authority" as "an arbitrary and capricious exercise of authority that is inconsistent with the mission of the executive agency concerned or the successful performance of a contract or grant of such agency." 41 U.S.C. § 4712(g)(1).

As the Court previously recognized in denying Defendant's motion for summary judgment, a protected disclosure under the NDAA does not require the use of "magic words." ECF No. 244 at 14. Rather, Plaintiff needed only show that she "reasonably believe[d]" the subject of her allegedly protected disclosure evidenced an abuse of authority relating to a federal contract. *Id.*; 41 U.S.C. § 4712(a)(1). To do so, Plaintiff was required to persuade the jury that "'a disinterested observer with knowledge of the essential facts known to and readily

---

[2] The NDAA enumerates five categories of wrongdoing a protected disclosure may reveal: "[(1)] gross mismanagement of a Federal contract or grant, [(2)] a gross waste of Federal funds, [(3)] an abuse of authority relating to a Federal contract or grant, [(4)] a substantial and specific danger to public health or safety, or [(5)] a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. 41 U.S.C. § 4712(a)(1). The jury was instructed it could find Plaintiff made a protected disclosure concerning any except the fourth of these categories. ECF No. 328 at 7. Even so, Plaintiff's motion for a new trial argues only that the jury erred when it found she had not made a protected disclosure concerning an abuse of authority relating to a federal contract. *See generally* ECF Nos. 339, 348. The Court's review of the record discloses no basis to find the jury's verdict clearly erroneous as to any of the three other categories of wrongdoing and therefore the Court constrains its analysis to the evidence at trial concerning an abuse of authority relating to a federal contract.

ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL – 5

ascertainable by the employee [could] reasonably conclude that the actions [at issue] evidence[d] gross mismanagement,' a gross waste of funds, an abuse of authority, or a violation of any law, rule, or regulation." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 890 (9th Cir. 2004) (first alteration in original) (quoting *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999)).

At trial, Plaintiff's theory was that she made a protected disclosure when, after she perceived improper pressure by management to alter the phrasing of the root cause statement, she emailed her supervisor, Dr. John LaFemina, the following:

> Per our [How Do I?] requirements and cause analyst qualification process, this is not how we do cause analysis at our Lab. We do not just let concerned stakeholders manipulate root causes at the end of the process to make us sound better. [The laboratory's attorney Mr. Cooke] looked at this report twice before it came to [management]. [Management] has yet to bring the team together to discuss how they got to the end results.
>
> That (changing root causes and results at the 11th hour) was the [prior Quality and Assurance Associate Laboratory Director's] way. Not doing it and I am not going to have this cause analysis team think that we have returned to the 'old' way of doing business. Otherwise, why bother. . . . I am not going to make this team sign a product they can't stand behind.

ECF No. 348-4 at 1. Plaintiff argued that in sending this email, she reasonably believed she was reporting an abuse of authority because management's objective in interfering with the root cause analysis was to avoid making Defendant "appear 'asleep at the wheel'" and reduce the likelihood Defendant would be held responsible for the fraudulent payment. *See* ECF No. 339 at 4. To be sure, there was

ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL – 6

sufficient evidence at trial for the jury to find in Plaintiff's favor on this point.

But the jury concluded otherwise, and having reviewed the record, the Court is not "left with the definite and firm conviction" that it erred in doing so. *Landes Const. Co.*, 833 F.2d at 1371. Indeed, the Court's review of the record discloses ample evidence supporting Defendant's theory that Plaintiff's email was an overreaction to benign, professionally customary input.

For example, Kathy Pryor testified that "wordsmith[ing]" a root cause statement was permissible so long as "the meaning stay[ed] the same." ECF No. 347-1 at 3–4. Dorian Conger, Defendant's expert witness concerning root cause analyses, testified that the "give-and-take," and resultant tension, he observed in the root cause analysis at issue was professionally reasonable. ECF No. 347-3 at 3–10. Martin Conger, Defendant's then-Chief Financial Officer, whom Plaintiff alleged was the source of the impermissible meddling, said his principal aim was to ensure factual accuracy in the root cause statement, rather than to ensure Defendant escaped responsibility for the loss. ECF No. 347-4 at 4–5. And Dr. LaFemina, from whom Plaintiff sought assistance, testified that while he thought Plaintiff was "just complaining about the process" and Conger being "overbearing," management's role in the affair was part of Defendant's "normal process." ECF No. 347-5 at 4.

Furthermore, although Plaintiff's own testimony provided substantial evidence from which the jury could have found she made a protected disclosure,

ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL – 7

the jury evidently assigned little or no weight to that testimony. Given Defendant's vigorous cross-examination of Plaintiff, the Court cannot find that the jury's decision in this regard was irrational. *See Flores v. City of Westminster*, 873 F.3d 739, 758 (9th Cir. 2017) ("[T]he jury was free to accord [trial testimony] whatever weight it saw fit, and the Court 'cannot substitute its evaluations for those of the jurors.'" (quoting *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1084 (9th Cir. 2009)). Finally, Plaintiff cites a finding by the Department of Energy Office of Inspector General that she had made a protected disclosure. *See* ECF No. 339 at 10 (citing ECF No. 11-1 at 22–23). But as Plaintiff recognizes—and indeed, requested—the Court excluded this evidence. *See* ECF No. 339 at 10 n.1 (citing ECF No. 21). As the jury was not permitted to consider it, the Inspector General's report has no bearing on the Court's determination of whether the jury erred in making findings based on the evidence before it.

It is, of course, impossible to determine which of the evidence the jury found persuasive and which evidence it discounted in reaching its conclusion that Plaintiff did not make a protected disclosure. But in evaluating Plaintiff's request to set aside the jury's verdict, that is not the Court's role. Instead, the Court need only determine whether the jury's verdict was against the "weight of the evidence." *Montgomery Ward & Co.*, 311 U.S. at 251. Having reviewed the record, the Court finds it was not.

ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL – 8

## CONCLUSION

Over nearly two weeks, Plaintiff tried her claims to a jury of her peers. Equipped with voluminous exhibits and having heard robust testimony, the jury deliberated and unanimously found Plaintiff's email to Dr. LaFemina concerning the root cause analysis was not a protected disclosure under the NDAA. Having reviewed the entire record, the Court is not left with "definite and firm conviction" that the jury erred in reaching that conclusion. The Court will not, therefore, disturb the jury's verdict. The motion is denied.

Accordingly, **IT IS HEREBY ORDERED**:

Plaintiff's Motion for New Trial, **ECF No. 339**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 18th day of March 2020.

_____
SALVADOR MENDOZA, JR.
United States District Judge